**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 0 7 2016

_for_ CHIEF JUSTICE

This opinion was filed for record
at _8:00 am_ on _July 7, 2016_

_Susan L. Carlson_
Acting
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 91438-9 |
| Respondent/Cross Petitioner, | ) | |
| v. | ) | |
| KISHA LASHAWN FISHER, | ) | En Banc |
| Petitioner, | ) | |
| and | ) | |
| COREY TROSCLAIR, | ) | |
| Cross Respondent. | ) | Filed **JUL 0 7 2016** |

MADSEN, C.J.—Kisha Fisher and Corey Trosclair were tried as codefendants for the felony murder of Leonard Masten. Prior to trial, Fisher made out-of-court statements that incriminated both herself and Trosclair. After denying both defendants' motions to sever, the State offered Fisher's statement at trial as evidence against her. Trosclair challenges the sufficiency of the redactions in protecting his confrontation clause rights under the Sixth Amendment to the federal constitution. Fisher challenges the trial court's refusal to provide the jury with her requested affirmative defense jury instruction. We hold that the redactions violated Trosclair's confrontation clause rights, but that the error

was harmless. We also hold that the trial court erred in not giving the affirmative defense jury instruction.

FACTS

On the evening of January 16, 2011, Masten was shot and killed at his apartment complex. Earlier that day, Masten sold cocaine to Trosclair and Mario Steele. Steele lived with his girlfriend, Fisher, who was also Trosclair's sister. Trosclair and Steele did not like the quality of Masten's cocaine, and they decided they would rob Masten to get their money back. Fisher overheard the men discussing the robbery and assumed they might rob Masten later that evening. Fisher then called Masten to set up a second drug deal for Steele and Trosclair. Trosclair and Steele went to Masten's apartment complex and, after a confrontation, shot him.

The police investigation led them to Trosclair, Fisher, and Steele. The police obtained Trosclair's cell phone records, which showed he made calls to Masten while near Masten's apartment. There was also cell phone evidence showing that Fisher placed a three-way call between Trosclair and Masten minutes before Masten was shot. And two eyewitnesses at the scene identified Trosclair as the perpetrator.

Both Fisher and Trosclair spoke with police about Masten's death. In her first interview, Fisher admitted she called Masten to set up a drug deal. In her second interview, Fisher admitted she overheard Steele discuss robbing Masten with someone else. Trosclair told police that he was not in Lakewood on the day of Masten's death.

2

After police arrested Trosclair, he confessed his involvement in Masten's death to his jail cellmate.

Fisher and Trosclair were both charged with first and second degree felony murder with firearm enhancements.[1] They were tried together as codefendants after the trial court denied their motion to sever under CrR 4.4(c). The State agreed to redact portions of Fisher's statement to police to remove references to Trosclair. The court approved redactions that replaced Trosclair's name with "the first guy."

At trial, one of the State's witnesses read Fisher's redacted statement to the jury.[2] This redacted statement was accompanied by a limiting instruction for the jury to use the statement as evidence only against the speaker, Fisher, and not as evidence against codefendant Trosclair. Neither Trosclair nor Fisher testified.

At the close of evidence, Fisher sought to have an affirmative defense to felony murder included in the jury instructions, on the grounds that she was unarmed and unaware that the other participants were armed and intended to engage in conduct likely to cause serious injury. She had not called any witnesses in her defense. The trial court denied this request. The jury found Fisher and Trosclair guilty of all charges. The trial court dismissed the second degree murder charges and sentenced Fisher to 350 months in custody and Trosclair to 553 months in custody.

---

[1] Steele pleaded guilty to first degree manslaughter and first degree robbery and was sentenced to 125 months in prison on August 31, 2012. He did not testify at Fisher and Trosclair's joint trial.

[2] The jury was not given a hard copy of Fisher's redacted statement.

Fisher and Trosclair appealed their convictions. The Court of Appeals affirmed. *State v. Fisher*, 184 Wn. App. 766, 338 P.3d 897 (2014). The court found that the State's redactions to Fisher's statement violated Trosclair's Sixth Amendment confrontation rights but the error was harmless. *Id.* at 776. In the unpublished part of its opinion, the Court of Appeals held that Fisher did not present sufficient evidence to support her requested affirmative defense. *State v. Fisher*, No. 43870-4-II, slip op. (unpublished portion) at 27 (Wash. Ct. App. Dec 2, 2014). The State petitioned for review of the court's holding on Trosclair's confrontation rights. Fisher petitioned for review of the court's affirmative defense holding. We granted review of both. *State v. Fisher*, 183 Wn.2d 1024, 355 P.3d 1153 (2015); *State v. Fisher*, 183 Wn.2d 1024, 355 P.3d 1154 (2015).

## ANALYSIS

### Trosclair

The State challenges the Court of Appeals' holding that the redactions to Fisher's statement were insufficient and therefore violated Trosclair's confrontation rights under the Sixth Amendment. *Fisher*, 184 Wn. App. at 776. We review alleged confrontation clause violations de novo. *State v. Koslowski*, 166 Wn.2d 409, 417, 209 P.3d 479 (2009). The confrontation clause of the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Confrontation typically occurs through cross-examination of the speaker regarding the out-of-court statement. However, when the speaker is a

codefendant, a conflict may arise between the defendant's Sixth Amendment rights and a codefendant's Fifth Amendment right not to testify. U.S. CONST. amend. V.

The United States Supreme Court addressed this conflict in *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). The Court held that when a nontestifying codefendant's out-of-court statement implicating the defendant is admitted in a joint trial, the defendant's confrontation clause rights are violated.[3] *Id.* at 128. However, in *Richardson v. Marsh*, the Court clarified that the protections of *Bruton* do not apply unless the codefendant's statements facially incriminate the defendant. 481 U.S. 200, 211, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987). Therefore, we must answer the question of whether Fisher's references to Trosclair, redacted by the State to read "the first guy," facially incriminate him. If they do not, then no *Bruton* violation has occurred.

*Marsh* and *Gray v. Maryland*, 523 U.S. 185, 118 S. Ct. 1151, 140 L. Ed. 2d 294 (1998), guide our analysis. *Marsh* involved a joint trial of respondent Marsh and her codefendant, Williams. 481 U.S. at 203. The State introduced Williams' redacted confession against Williams, and the judge gave the jury a limiting instruction not to use

---

[3] This court recently addressed the continued vitality of the *Bruton* doctrine as applied to nontestimonial statements. *State v. Wilcoxon*, 185 Wn.2d 324, ___ P.3d ___ (2016) (plurality opinion). The issue there was whether, in light of *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) and *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), the *Bruton* doctrine applied to nontestimonial statements. *Wilcoxon*, 185 Wn.2d at 332-33. A plurality of the court held that "when an out-of-court statement made by a nontestifying codefendant is nontestimonial, *Bruton* is inapplicable because such statements are outside the scope of the confrontation clause." *Id.* at 334. Here, the State does not argue that Fisher's statements were nontestimonial. Rather, the issue is whether Fisher's testimonial statements were sufficiently redacted so as to not implicate *Bruton*. *Wilcoxon*, therefore, is not relevant to our analysis in this context.

Williams' confession against Marsh. *Id.* at 204. The issue was whether *Bruton*'s protections apply when a "codefendant's confession is redacted to omit any reference to the defendant, but the defendant is nonetheless linked to the confession by evidence properly admitted against him at trial." *Id.* at 202. The Court held *Bruton*'s protections did not apply because the "confession was redacted to omit all reference to respondent—indeed, to omit all indication that *anyone* other than [a named third person] and Williams participated in the crime." *Id.* at 203. The defendant was linked to the crime only through inferences the jury made as evidence was presented. *Id.* at 208. Following *Marsh*, "admission of a nontestifying codefendant's confession with a proper limiting instruction" must be "redacted to eliminate not only the defendant's name, but any reference to her existence." *Id.* at 211.

The Court returned to the issue of redactions in *Gray* and further refined the parameters of *Bruton*. In *Gray*, the redactions at issue substituted blank spaces or the word "'deleted'" for defendant Gray's name. 523 U.S. at 188. The Court held that this "so closely resemble[d] *Bruton*'s unredacted statements" so as to fall within *Bruton*'s protective rule. *Id.* at 192. Central to the Court's holding was the fact that the jury will "often realize that the confession refers specifically to the defendant." *Id.* at 193. The Court explained:

> A juror somewhat familiar with criminal law would know immediately that the blank, in the phrase "I, Bob Smith, along with     , robbed the bank," refers to defendant Jones. A juror who does not know the law and who therefore wonders to whom the blank might refer need only lift his eyes to Jones, sitting at counsel table, to find what will seem the obvious answer, at least if the juror hears the judge's instruction not to consider the confession

6

as evidence against Jones, for that instruction will provide an obvious reason for the blank. A more sophisticated juror, wondering if the blank refers to someone else, might also wonder how, if it did, the prosecutor could argue the confession is reliable, for the prosecutor, after all, has been arguing that Jones, not someone else, helped Smith commit the crime.

*Id.* The Court then clarified its position on inferential incrimination, stating that "inference pure and simple cannot make the critical difference" and that "[*Marsh*] must depend in significant part upon the *kind* of, not the simple *fact* of, inference." *Id.* at 195-96. The possible inferences to be made in *Gray* involved statements that "despite redaction, obviously refer[ed] to someone, often obviously the defendant" and involved "inferences a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Id.* at 196.

Following *Marsh* and *Gray*, the issue became exactly which redaction or type of redactions were appropriate. *Marsh* left open the question of whether the use of neutral pronouns may be used instead of a blank space or the word "deleted" and still satisfy *Bruton*. *Marsh*, 481 U.S. at 211 n.5 ("We express no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun."). Later, dicta in *Gray* raised a question about whether neutral pronouns are sufficient to satisfy *Bruton* when the majority wondered why the confession could not have been altered to read, "Me,   ,   and a few other guys."[4] *Gray*, 523 U.S. at 192. Some courts have interpreted this query to mean that a redaction using a neutral pronoun necessarily satisfies *Bruton*. *See, e.g., United States v. Winston*, 55 F. App'x 289, 294

---

[4] It should be noted that in *Gray*, the phrase "a few other guys" was contained in the original statement and was not a replacement for more specific language.

(6th Cir. 2003) ("several of our sister circuits have noted that a *Bruton* violation can be avoided by replacing the co-defendant's name with a neutral pronoun or other generalized phrase"). *But see United States v. Gonzalez*, 183 F.3d 1315, 1322 (11th Cir. 1999) (holding that a redacted confession implicating a precise number of the confessor's codefendants violated the confrontation clause); *United States v. Vejar-Urias*, 165 F.3d 337, 340 (5th Cir. 1999) (holding that use of "'someone'" violated the confrontation clause).

Neither the Supreme Court nor this court has addressed this question, but our Court of Appeals has. In *State v. Vannoy*, in a joint trial of three defendants, where the State introduced two codefendants' confessions admitting that "we" saw a good service station to rob, "we" pulled around the corner, and "we" got out of the car, the court held that it was improper to admit the statements against the third codefendant because a jury could "readily conclude that [the defendant] was included in the 'we's' of the codefendants' statements." 25 Wn. App. 464, 473-75, 610 P.2d 380 (1980).[5] Similarly, the Court of Appeals has rejected the use of an "other guy" redaction where only two accomplices committed the crime and only two defendants were on trial. *State v. Vincent*, 131 Wn. App. 147, 154, 120 P.3d 120 (2005). In contrast, in *State v. Medina*, the court approved the admission of the codefendant's statement because the redactions were so varied ("'other guys,' 'the guy,' 'a guy,' 'one guy,' and 'they'") among six possible accomplices that it was impossible to clearly infer that one codefendant's

---

[5] Although *Vannoy* was decided prior to *Marsh* and *Gray*, its reasoning remains sound.

statement referred to either the appellant or the other codefendant. 112 Wn. App. 40, 51, 48 P.3d 1005 (2002). And in *State v. Cotten*, the court approved the admission of the codefendant's statement because it did not implicate or acknowledge the presence of a coconspirator. 75 Wn. App. 669, 690, 879 P.2d 971 (1994). We agree with our Court of Appeals that the exact form of the redaction is not dispositive. Rather, under *Marsh* and *Gray*, the question is whether the redaction obviously refers to the defendant. We decline to adopt the bright line rule of some circuit courts that a neutral pronoun always satisfies *Bruton* and instead hold that whatever the form of the redaction, it must be clear that the redaction does not obviously refer to the defendant.

Applying the rule to this case, while "the first guy" is not an obvious redaction and does not implicate Trosclair by name, it nonetheless obviously refers to Trosclair. Before hearing Fisher's statement, the jury knew that the codefendants were Fisher and Trosclair. Fisher's statements implicate three people: Steele, "the first guy," and a man from California. Steele is referenced by name throughout Fisher's interview. Steele is obviously not the name of Fisher's codefendant. Steele is also not the man from California. The question, then, is whether Fisher's codefendant is the man from California or "the first guy?" Fisher stated that she had not seen the man from California before the day of the murder and had not seen him since. Most of Fisher's statements regarding the man from California pertain to the drug deal that had taken place earlier in

9

the day.[6] It is unclear whether or not the man from California was involved in the later drug deal which led to the murder. Her statements also reveal that she knows Steele and "the first guy" were already in police custody. Steele and "the first guy" had been arrested, the man from California has not. This eliminates the man from California as her codefendant. The only possible person remaining from the three alleged coconspirators who could be "the first guy" was her codefendant, Trosclair. In short, the jury would be able to discern to whom "the first guy" refers "even were the confession the very first item introduced at trial."[7] *Gray*, 523 U.S. at 196.

What is also particularly troubling is that the codefendant's first name, "Corey," was used twice in Fisher's statements and put before the jury. 14 Verbatim Tr. of Proceedings (VTP) at 1632. Granted, it appears the court and Trosclair's attorney had agreed to the use of his name prior to trial, and Trosclair's name was used not directly in connection with the robbery but to establish that both Steele and Trosclair knew the victim had told other people that Fisher was a prostitute. *Id.* at 1631-32. Even so, it makes it more likely that the jury would conclude "the first guy" referred to Trosclair.

The State argues that *State v. Larry*, 108 Wn. App. 894, 34 P.3d 241 (2001), dictates a different result. In *Larry*, the codefendant's confession included references to

---

[6] The State elicited testimony from Fisher regarding the physical characteristics of the man from California. He is a tall, slim, dark-skinned black man—"like basketball player type slim." 14 Verbatim Tr. of Proceedings (Aug. 8, 2012) at 1613. It is unclear from the record what Trosclair's physical characteristics are, but if he is anything but a tall, slim, dark-skinned black man, then the man from California was most certainly not Fisher's codefendant.

[7] The State's theory throughout the case was that two people, Steele and Trosclair, committed the murder.

another person ("'he,'" "'the driver'") who participated in the robbery and shooting. *Id.* at 904 n.4. The court appears to hold that the statements satisfied *Bruton* because three people were present and therefore the statement did not obviously implicate the codefendant. *Id.* at 905-07. However, only two people committed the crime, and the third person was the victim. *Id.* Any reference to the other person, even if referred to as "he," obviously incriminated the defendant since there were only two perpetrators and two defendants. To the extent *Larry* holds that *Bruton* requires the redaction only not specifically name the defendant and not be an obvious deletion, it is incorrect and we disapprove it. *Id.* at 905.

*Marsh* and *Gray* require that the redaction omit the existence of anyone other than the codefendant. Applying this standard, we conclude that the use of "the first guy" as a replacement for Trosclair's name in Fisher's statement implicates Trosclair and that the admission of Fisher's statements during her joint trial with Fisher amounted to constitutional error. We now must determine whether that error was harmless.

Confrontation clause violations are subject to a harmless error analysis. *State v. Lui*, 179 Wn.2d 457, 495, 315 P.3d 493, *cert. denied*, 134 S. Ct. 2842 (2014). An error is harmless if we are persuaded beyond a reasonable doubt that the jury would have reached the same result in absence of the error. *State v. Watt*, 160 Wn.2d 626, 635, 160 P.3d 640 (2007). The test is whether the untainted evidence was so overwhelming that it necessarily leads to a finding of guilt. *Lui*, 179 Wn.2d at 495. Here, the untainted evidence against Trosclair was overwhelming. Trosclair related the murder to his

11

cellmate in detail. An eyewitness identified Trosclair in a photo lineup as one of the perpetrators at the scene. Another eyewitness identified him as the perpetrator with a gun. Cell phone records placed Trosclair with Steele at the scene and showed Trosclair contacted Masten moments before the shooting. We conclude that the confrontation clause error was harmless beyond a reasonable doubt.

Fisher

Fisher challenges the Court of Appeals' unpublished decision affirming the trial court's refusal to instruct the jury on her affirmative defense. During trial, Fisher requested that *Washington Pattern Jury Instruction* 19.01 be given to the jury. 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 19.01 (1997) (WPI). WPI 19.01 is based on the affirmative defense to felony murder found in RCW 9A.32.030(1)(c), which provides specifically that it is a defense if the jury finds by a preponderance of the evidence that the defendant:

> (i) Did not commit the homicidal act or in any way solicit, request, command, importune, cause, or aid the commission thereof; and
> (ii) Was not armed with a deadly weapon, or any instrument, article, or substance readily capable of causing death or serious physical injury; and
> (iii) Had no reasonable grounds to believe that any other participant was armed with such a weapon, instrument, article, or substance; and
> (iv) Had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

The State conceded that Fisher met the first two elements but argued that no evidence was presented to support the third and fourth elements. The trial court agreed and refused to provide the instruction.

12

Fisher was "entitled to have the jury instructed on [her] theory of the case if there [was] evidence to support that theory." *State v. Williams*, 132 Wn.2d 248, 259-60, 937 P.2d 1052 (1997); *State v. Janes*, 121 Wn.2d 220, 237, 850 P.2d 495 (1993). Failure to do so is reversible error. *State v. Griffin*, 100 Wn.2d 417, 420, 670 P.2d 265 (1983). In evaluating Fisher's evidence, the trial court must view it in the light most favorable to her. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000); *cf. State v. Henderson*, 182 Wn.2d 734, 736, 344 P.3d 1207 (2015) (lesser-included offense instruction needed where evidence viewed in light most favorable to defendant raised inference he committed lesser crime). This evidence may come from "whatever source" that tends to show that the defendant is entitled to the instruction. *State v. McCullum*, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983). Because the defendant is entitled to the benefit of all the evidence, *State v. Gogolin*, 45 Wn. App. 640, 643, 727 P.2d 683 (1986), her defense may be based on facts inconsistent with her own testimony. *State v. Callahan*, 87 Wn. App. 925, 933, 943 P.2d 676 (1997). "The trial court is justified in denying a request for [an affirmative defense] instruction only where no credible evidence appears in the record to support [it]." *McCullum*, 98 Wn.2d at 488. In short, the defendant has the burden of production and, if met, the burden of persuading the jury by a preponderance of the evidence that she has met the four required elements.

"The question of whether the defendant has produced sufficient evidence to raise a claim of self-defense is a matter of law for the trial court." *Janes*, 121 Wn.2d at 238 n.7. Here, the basis for the trial court's refusal to give the requested jury instruction appears to

13

be lack of evidence supporting an affirmative defense. Therefore, our standard of review is de novo.

The State argues that because Fisher did not testify or present witnesses, the only way she can carry her burden of production is through her statements to the police introduced in the State's case in chief. Fisher, on the other hand, contends that in addition to her statement, she may point to the State's absence of evidence on the third and fourth elements—namely that the State did not produce any evidence tending to show that Fisher had reasonable grounds to believe that one of the men was armed or that one of them intended to engage in conduct likely to result in death or serious physical injury—to satisfy her burden of production. Although we held that the evidence to support a defense instruction may come from "whatever source" tends to support it, *McCullum*, 98 Wn.2d at 488, we take this opportunity to clarify exactly how a defendant may satisfy her burden of production. First, she may testify or call her own witnesses. Although testifying or calling one's own witnesses to support an affirmative defense instruction may be helpful in persuading the jury, we do not require a defendant to do so. Making this a necessary means of satisfying the burden of production would force the defendant to waive one constitutional right in order to invoke the other.

Second, the defendant may point to other evidence presented at trial, including the State's evidence. *State v. Gabryschak*, 83 Wn. App. 249, 253, 921 P.2d 549 (1996); *cf. United States v. Hairston*, 64 F.3d 491, 494 (9th Cir. 1995) (requiring alibi defense instruction even if defendant does not testify and only evidence of alibi is presented by

the government). In *Gabryschak*, the defendant sought to have a voluntary intoxication defense instruction given to the jury. 83 Wn. App. at 252. Gabryschak did not testify, nor did he call any witnesses. *Id.* at 253. Instead, counsel for Gabryschak used cross-examination of the State's witnesses in order to elicit the testimony necessary to support the intoxication instruction. *Id.* The court held that a defendant may exercise her right to refrain from testifying and rely on the evidence elicited from the State and cross-examination of the State's witnesses to support an affirmative defense instruction. *Id.*

A defendant may not, however, point to the State's absence of evidence in order to satisfy her burden. Even in cases of self-defense, in which the State bears the burden of proof, the defendant must produce at least some evidence of self-defense.[8] *Janes*, 121

---

[8] It is worth noting that self-defense has typically been treated differently from other affirmative defenses in which the legislature clearly places the burden on defendants. In *McCullum*, this court articulated a test to determine whether the prosecution must prove the absence of a defense—in that case, self-defense—beyond a reasonable doubt. The absence of a defense is an ingredient of the offense if "(1) the statute may reflect a legislative intent to treat absence of a defense as one 'of the elements included in the definition of the offense of which the defendant is charged', or (2) one or more elements of the defense may 'negate' one or more elements of the offense which the prosecution must prove beyond a reasonable doubt." *McCullum*, 98 Wn.2d at 490 (citation omitted) (quoting *Patterson v. New York*, 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *State v. Hanton*, 94 Wn.2d 129, 132-33, 614 P.2d 1280 (1980)). This court clarified the test in *State v. W.R. Jr.* when it analyzed two Supreme Court cases to conclude that "[r]ead together, *Martin* and *Smith* hold that the State may burden a defendant with proving an affirmative defense that excuses otherwise criminal conduct even when the defense overlaps one of the elements under most circumstances, but the State may not burden a defendant with proving a defense that necessarily negates an element of the charged offense. Thus, the propriety of the negates analysis is no longer in doubt." 181 Wn.2d 757, 764, 336 P.3d 1134 (2014) (citing *Martin v. Ohio*, 480 U.S. 228, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987); *Smith v. United States*, ___ U.S. ___, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013)). The legislature did not fashion RCW 9A.32.030(1)(c) in such a way that it intended the State to carry the burden, and it does not negate an element of the crime.

Wn.2d at 237. Allowing a defendant to point to what essentially amounts to the absence of rebuttal evidence to an affirmative defense adds additional elements to the crime the State must prove.

We agree with *Gabryshack* and reaffirm *McCullum*—applying them to all affirmative defenses—and hold that a defendant may use any evidence presented at trial, regardless of the party which presented it, in order to satisfy her burden of production for an affirmative defense instruction. A defendant may not, however, point to an absence of evidence.

Turning to the case at hand, Fisher argues that portions of her statement to investigators that were read into evidence, viewed in the light most favorable to her, supported giving the affirmative defense instruction. She argues that while she overheard the men talking about robbing Masten, she told Steele to stay out of it. She was under the impression that Steele was not going to be involved in any robbery and was going only to show Trosclair where to meet Masten. Finally, she stated that when Steele left his cell phone at home and subsequently called her to ask her to make contact with Masten, she assumed there would be no robbery and that Steele was simply trying to arrange the purchase of more drugs. Reviewing the transcript of her statement, it is often difficult to pinpoint what questions were directly answered, the timeline referred to in some answers, and the meaning of many answers. Read in this context, it is possible that a juror could decide that Fisher had shown by a preponderance of the evidence that she had no reasonable grounds to believe that the men were armed or that they intended to engage in

16

conduct likely to result in death or serious injury. While not overwhelming, a defendant is required to produce only some evidence to satisfy the burden of production. The affirmative defense instruction should have been given to the jury. *See United States v. Zuniga*, 6 F.3d 569, 570 (9th Cir.1993) ("Even if the alibi evidence is 'weak, insufficient, inconsistent, or of doubtful credibility,' the instruction should be given." (quoting *United States v. Washington*, 819 F.2d 221, 225 (9th Cir.1987)).

## CONCLUSION

The redaction of Trosclair's name to "first guy" in Fisher's confession was insufficient, as it obviously referred to Trosclair. It was therefore constitutional error to read Fisher's statement into evidence. However, in light of the overwhelming untainted evidence, this error was harmless. We affirm Trosclair's conviction.

As to Fisher, we hold she produced sufficient evidence at trial to warrant an affirmative defense jury instruction. Failure to do so constitutes reversible error. We reverse Fisher's conviction and remand for a new trial.

No. 91438-9

_Madsen, C. J._

WE CONCUR:

_[signature]_      _Wiggins, J._

_[signature] Owens, J._

_Fairhurst, J._      _Gonzalez McCloud, J._

18

*State v. Fisher*

No. 91438-9

STEPHENS, J. (concurring in part and dissenting in part)—I concur in the majority's decision to affirm Corey Trosclair's conviction based on its conclusion that the violation of Trosclair's confrontation clause rights was harmless error.

As to codefendant, Kisha Fisher, I agree with Justice González that the trial court properly rejected her proposed affirmative defense instruction. Accordingly, I would also affirm Fisher's conviction.

GONZÁLEZ, J. (concurring in part and dissenting in part)—I concur with the majority that Corey Trosclair's conviction should be affirmed. However, I respectfully disagree with the majority's conclusion that Kisha Fisher's conviction should be reversed.

I agree with the majority that a defendant may rely on evidence presented at trial from either party to support an affirmative defense instruction. But even considering the State's evidence, the affirmative defense instruction was not warranted. To receive the instruction in this case, there must have been sufficient evidence presented for the jury to find Fisher had no reasonable grounds to believe any participant was armed with a deadly weapon or intended to engage in conduct likely to result in death or serious physical injury. 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 19.01 (1997). Neither the State nor Fisher presented such evidence. When given the opportunity during trial,

counsel for Fisher did not elicit *any* testimony to support the notion that Fisher did not know the other participants were armed or planning to harm Leonard Masten. If anything, the instruction is inconsistent with Fisher's statement to police that she assumed Mario Steele and Trosclair were going to rob Masten even after Steele told her that he was only going to lead the other men to Masten. 14 Verbatim Tr. of Proceedings (VTP) (Aug. 8, 2012) at 1644. Robberies by their nature require the use of some sort of force. Fisher's statement is not evidence that she had no reasonable grounds to believe Steele's or Trosclair's conduct was likely to result in serious physical injury. *See State v. Davis*, 101 Wn.2d 654, 659, 682 P.2d 883 (1984). Without eliciting some evidence to support the affirmative defense instruction, Fisher was not entitled to the instruction. I would affirm her conviction.

For Trosclair, I would hold that the redactions to Fisher's statement did not facially incriminate Trosclair and did not violate Trosclair's confrontation rights. "*Bruton*, as interpreted by *Richardson*, holds that certain 'powerfully incriminating extrajudicial statements of a codefendant'" can be so prejudicial that a limiting instruction cannot correct them. *Gray v. Maryland*, 523 U.S 185, 192, 118 S. Ct. 1151, 140 L. Ed. 2d 294 (1998) (quoting *Richardson v. Marsh*, 481 U.S. 200, 207, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987) and citing *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968)). When a confession is not

incriminating on its face but becomes so "only when linked with evidence introduced later at trial," the confession falls outside the protections of *Bruton*. *Richardson*, 481 U.S. at 208.

I agree with the majority that admission of a nontestifying codefendent's out-of-court statement can violate the confrontation clause when the statement facially incriminates the defendant. I disagree with the majority that this one did. Nothing in Fisher's statement "powerfully incriminate[es]" Trosclair as *Bruton* prohibits. *Bruton*, 391 U.S. at 135-36. When read in its entirety, it is difficult to tell who Fisher is referring to when she said "the first guy." The majority asserts that the redaction "obviously refers to Trosclair" because Fisher stated she knew Steele and "'the first guy'" were already in police custody. Majority at 9. All that statement shows, however, is that Fisher was aware that two people had been arrested in connection with this crime. That statement, on its face, does not implicate Trosclair. Fisher later said that there was a third person, the man from California, present at the drug deal with Masten. 14 VTP (Aug. 8, 2012) at 1610. Contrary to the majority's view, Fisher never indicated whether she knew if the man from California had been arrested, which means he cannot be eliminated as her codefendant. *See* majority at 9. Additionally, throughout the rest of Fisher's statement when she described the men at Steele's house discussing the robbery, she either referred to Steele by name or referred to the group of men as "they." *See* 14

3

VTP (Aug. 8, 2012) at 1616-30, 1637-47. It is unclear from these statements how many men she was referring to, and none of these statements obviously refers to Trosclair as the majority concludes.

Finally, the majority finds "troubling" that Trosclair's first name is used twice in Fisher's statement, which "makes it more likely that the jury would conclude 'the first guy' refers to Trosclair." Majority at 10. I disagree. By naming Trosclair, the jury may likely conclude 'the first guy" must refer to someone other than Trosclair. Why else would Fisher refer to Trosclair by name in some places and not in others? Furthermore, defense counsel for both Fisher and Trosclair jointly moved the court to have the redactions replaced with Trosclair's first name in those two places. 9 VTP (July 31, 2012) at 1033-35. If it was error to do so, then the error was invited and should not be reviewed on appeal. *State v. Henderson*, 114 Wn.2d 867, 871, 792 P.2d 514 (1990) (quoting *State v. Boyer*, 91 Wn.2d 342, 345, 588 P.2d 1151 (1979)).

Without "powerfully incriminating" evidence against Trosclair in the redacted statement, the redactions did not violate Trosclair's confrontation rights. Fisher did not present sufficient evidence to support the affirmative defense instruction. Accordingly, I concur with the majority in affirming Trosclair's conviction and dissent on its reversal of Fisher's conviction.

González, J.