# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49176-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| LOUIS LASACK, | |
| Appellant. | |

BJORGEN, C.J. — Louis Lasack appeals his conviction for bail jumping. He argues that (1) the trial court erred by refusing to instruct the jury on the uncontrollable circumstances affirmative defense to bail jumping and (2) if the State prevails on appeal, this court should decline to impose appellate costs.

We hold that the trial court did not err by refusing to give Lasack's proposed jury instruction, and we decline to address the issue of appellate costs. Consequently, we affirm.

## FACTS

On August 13, 2015, Lasack was arrested for second degree robbery. On December 8, 2015, Lasack signed a scheduling order directing him to appear in court on December 29. The order explained that if Lasack failed to appear, he would then be subject to additional charges and punishment. Lasack failed to appear in court on December 29, and a bench warrant was issued for his arrest. He was arrested on January 5, 2016.

The State charged Lasack with one count of second degree robbery and two counts of bail jumping. At trial, Lasack explained that he did not appear for his hearings on December 29, 2015 due to mechanical issues with his car:

[Defense (D)]: And do you recall being ordered to appear to court on December 29th of 2015?

[Lasack]: Yes.

[D]: Did you sign a court order regarding that court date?

[Lasack]: Yes, I did.

[D]: Did you fail to show up at that court date?

[Lasack]: Yes, I did.

[D]: Why did you fail to appear at that court appearance?

[Lasack]: Unforeseen circumstances as I was leaving my neighborhood, my radiator blew up.

[D]: At approximately what time did your radiator blow up?

[Lasack]: I cannot give a time. I honestly don't remember. I just know that I had court that day early morning. As I was heading to prepare, and I was working on it all day for seven days until I got picked up in front of the house working on my vehicle trying to get it fixed so I could turn myself in and set up a quash.

[D]: So could you describe the work that you performed on your vehicle up until the point you were arrested?

[Lasack]: Well, flushing my radiator, getting a flush kit. Having my father help me as much as he can. My roommate, Chris, he's a mechanic. He has his own work to do, but he helped me as much [as] he could.

[D]: Where did your radiator blow up?

[Lasack]: Just as I was leaving my neighborhood.

[D]: Where is your neighborhood?

[Lasack]: 152 and Waller – 155th and Waller, excuse me.

[D]: Is there a specific address of your house?

[Lasack]: Yes, sir.

[D] What is that?

[Lasack]: [States specific address].

[D]: Approximately how far – what is the distance from that location to the courthouse?

[Lasack]: Give or take 17 to 20 miles.

Verbatim Report of Proceedings (VRP) (June 29, 2016) at 186-88.

The prosecution, on cross-examination, inquired further into Lasack's failure to appear:

> [Prosecution (P)] And you're saying you had car trouble?
> [Lasack]: Yeah. I cannot foresee my radiator blowing up, cracking down, or whatever you want to call it, super steam coming out of the top of it on that morning to where I go around the block to the light and it's already overheating.
> [P]: You know, and you knew at that point in time on this day that we're talking, on December 29th, that failing to appear for a court appearance on a case can result in another charge?
> [Lasack]: Yes, ma'am.
> [P]: So you know that the penalty, potential penalty if that occurs?
> [Lasack]: I understand that is a penalty, but I also walked from here to my house. It took me six hours to do it in flip flops. And I know. That was a good day, too. So it was dead winter and I had no clothes. I lived with roommates.
> [P]: I'm sorry. That was you walking from the county?
> [Lasack]: No, it's not. I said I walked from here to my house before.
> [P]: From the county-city building to your house?
> [Lasack]: Yes, ma'am.
> [P]: I think you indicated that –
> [Lasack]: Not at that time. I have said before. I have walked it before.
> [P]: Okay.
> [Lasack]: At another time.
> [P]: You had a friend, Chris, that apparently – was he helping work on your car?
> [Lasack]: He had four other cars to work on.
> [P]: And apparently your dad?
> [Lasack]: No, my dad lives in Puyallup. He helped me by bringing me a little bit of gas money to get to court that day, but didn't really help out that much.

VRP (June 29, 2016) at 197-98.

At the conclusion of testimony, Lasack asked the court to give the jury an instruction on the uncontrollable circumstances affirmative defense to bail jumping related to his failure to appear on December 29, 2015. The court declined to give the instruction, reasoning:

> [Court]: [B]y definition uncontrollable circumstance is an act of nature such as flood, earthquake, fire or a medical condition that requires immediate hospitalization or treatment or an act of man such as automobile accidents or threats

3

of death, forcible sexual attack, substantial bodily injury in the immediate future which there is no time for a complaint to the authorities, and no time or opportunity to resort to the courts.

So I don't think you just automatically get that instruction for the alleged defense without meeting the legal standard set forth. I haven't – there is no testimony presented that any of those contemplated circumstances would have existed, so I don't think you get the instruction regarding the defense.

. . . I don't think it would be appropriate to give the defense the instruction when there is no factual basis that would support it.

VRP (June 29, 2016) at 200-01.

The jury found Lasack guilty of second degree robbery and one count of bail jumping related to his failure to appear on December 29, 2015. Lasack appeals his bail jumping conviction.

ANALYSIS

I. LEGAL STANDARDS

A defendant is entitled to have the jury instructed on his theory of the case if there is evidence to support that theory. *State v. Fisher*, 185 Wn.2d 836, 848, 374 P.3d 1185 (2016). Whether a defendant has produced sufficient evidence to merit an affirmative defense instruction is a matter of law for the trial court. *Fisher*, 185 Wn.2d at 849. On appeal, we review de novo a trial court's refusal to give a requested jury instruction based on lack of evidence. *Fisher*, 185 Wn.2d at 849. We evaluate whether the evidence presented supports a requested affirmative defense in the light most favorable to the defendant. *Fisher*, 185 Wn.2d at 849. In reviewing the evidence, we do not weigh the evidence, since that function is reserved for the finder of fact. *State v. Williams*, 93 Wn. App. 340, 348, 968 P.2d 26 (1998), *abrogated on other grounds by State v. Kurtz*, 178 Wn.2d 466, 309 P.3d 472 (2013). Any source of evidence may support giving an instruction, even if that evidence is inconsistent with the defendant's own testimony.

4

*Fisher*, 185 Wn.2d at 849. Stated another way, a trial court is justified in refusing to give an affirmative defense instruction only if no credible evidence appears in the record to support the instruction. *Fisher*, 185 Wn.2d at 849.

## II. UNCONTROLLABLE CIRCUMSTANCES

Lasack argues that the trial court erred by refusing to instruct the jury on the uncontrollable circumstances affirmative defense to bail jumping and by doing so deprived him of his rights to due process and a jury trial. We disagree.

Under RCW 9A.76.170(2):

It is an affirmative defense to a prosecution [for bail jumping] that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender, and that the person appeared or surrendered as soon as such circumstances ceased to exist.

RCW 9A.76.010(4) further defines "uncontrollable circumstances" as:

[A]n act of nature such as a flood, earthquake, or fire, or a medical condition that requires immediate hospitalization or treatment, or an act of a human being such as an automobile accident or threats of death, forcible sexual attack, or substantial bodily injury in the immediate future for which there is no time for a complaint to the authorities and no time or opportunity to resort to the courts.

Lasack argues that by refusing to "let[ ] the jury decide whether [Lasack's] evidence met the legal standard for the affirmative defense," the trial court improperly assumed the role of the jury. Br. of Appellant at 8. He asserts that "[w]hether car trouble and lack of money for the bus was an uncontrollable circumstance such that it amounted to an affirmative defense," was an issue of fact for the jury. Br. of Appellant at 8. However, whether a party has submitted sufficient evidence to merit an instruction is a threshold question of law for the court. *Fisher*, 185 Wn.2d at 849. The trial court did not err by declining to submit a question of law to the jury.

Therefore, we only consider whether Lasack presented sufficient evidence to support an uncontrollable circumstances affirmative defense instruction as a matter of law.

Lasack argues that his mechanical problems with his car constituted an uncontrollable circumstance that prevented him from appearing at trial. He argues also that he lacked money for bus fare to the courthouse.

However, we need not decide whether car trouble counts as an uncontrollable circumstance for this purpose or the role in the analysis of Lasak's claim that he lacked bus fare. Under RCW 9A.76.170(2), the uncontrollable circumstances defense to bail jumping requires that "the person appear[ed] or surrender[ed] as soon as such circumstances ceased to exist." The record does not contain evidence showing that Lasack did so.[1] As such, Lasack did not produce sufficient evidence to merit an uncontrollable circumstances affirmative defense instruction, and the trial court did not err by refusing to give that instruction.

### III. APPELLATE COSTS

Lasack asks us to exercise our discretion to deny any appellate costs the State requests. Under RAP 14.2, if the State decides to file a cost bill, Lasack may challenge that on the basis of inability to pay. Therefore, we decline to reach this issue.

---

[1] We note also that Lasack's statement that he did not have money for bus fare was made in response to the trial court's refusal to give the jury an uncontrollable circumstances affirmative defense instruction, and not while Lasack was testifying under oath. Our Supreme Court has defined "testimony" as "evidence that is given at trial *while the witness is under oath*." *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (emphasis added) (quoting BLACK'S LAW DICTIONARY 1485 (7th ed. 1999)).

No. 49176-1-II

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

We concur:

Worswick, J.

Maxa, J.