**FILED**
**JANUARY 9, 2018**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34903-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JUSTIN L. McDERMOTT, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Justin McDermott appeals his conviction for unlawful possession of a firearm, arguing the trial court improperly denied his request for a necessity defense jury instruction. Because the facts proffered by Mr. McDermott support the requested instruction, we reverse Mr. McDermott's conviction and remand this matter for retrial.

## FACTS

In responding to a domestic disturbance call, Spokane police officers learned Mr. McDermott, a convicted felon, had displayed a shotgun during an incident at his

home. The gun was recovered during a residential search warrant. Mr. McDermott was subsequently charged with unlawful possession of a firearm in the second degree.

As explained at trial, Mr. McDermott lived at his mother's house with his sister and his sister's two young children. Mr. McDermott's mother had not been living at the home for several months. Mr. McDermott's younger brother had a room in the house, but was away at college.

On the day of the domestic disturbance call, Mr. McDermott's mother came to the home with two men unknown to Mr. McDermott and his sister. One of the men commented they were there "to keep an eye on these MF'ers." Verbatim Report of Proceedings (Sept. 21, 2016) at 111. When Mr. McDermott's sister asked one of the men not to smoke inside the home, due to the presence of children, he complied. However, the other man suddenly became extremely aggressive and started yelling and cursing. The man told them, "you don't know who I am," and "[y]ou don't know what I'm packing." *Id*. at 77, 112. He said he was in a gang, showed what was believed to be a gang sign, and said he would not hesitate to kill them all. Mr. McDermott's sister testified at trial that the man pointed his finger at her like a gun and suggested that he may have weapons on him. She also testified that she asked the two men several times to leave the home, but they did not comply.

Mr. McDermott testified that the man threatening his sister had fidgeted around his waistband area and lifted his shirt indicating he might have a weapon. Both Mr. McDermott and his sister testified that despite not seeing the man display a weapon, they felt extremely threatened for themselves and for the children.

When Mr. McDermott's sister announced she was calling the police, the man again threatened to kill them and charged toward her. She retreated and led her children to a back room when the man continued to lunge and charge toward her. When Mr. McDermott's sister went to retrieve her cell phone from her purse and call the police, she saw Mr. McDermott approaching the men while holding a shotgun and instructing them to leave. Then the two men left, Mr. McDermott closed and locked the door, and put the shotgun in his younger brother's room. Law enforcement was never able to identify or locate the two men.

Mr. McDermott's younger brother testified he purchased the shotgun about three years ago and kept it in his room. Mr. McDermott testified that he had retrieved the shotgun from his brother's room in order to intimidate the two men into leaving.

During trial, Mr. McDermott requested jury instructions on the defenses of: (1) defense of self and others, and (2) necessity. The trial court declined to give both instructions, stating that it could not find from the evidence that Mr. McDermott was in

3

reasonable fear of death or serious bodily injury since the two men did not display any

firearms. The court also stated the defense of self-defense was unavailable since the

offense here is one of strict liability.

The jury found Mr. McDermott guilty, and the court sentenced him to an

exceptional downward sentence of four days with credit for four days served based on his

offender score of zero. Mr. McDermott appeals and is found indigent for such purpose.

ANALYSIS

*Necessity defense jury instruction*

A defendant is entitled to present jury instructions regarding his or her theory of

the case, so long as there is some evidentiary support. *State v. Fisher*, 185 Wn.2d 836,

848-49, 374 P.3d 1185 (2016). When a trial court denies a defense instruction on the

basis of lack of sufficient evidence, our review is de novo. *Id.* at 849.

The necessity defense applies in the context of an unlawful firearm possession

charge. *State v. Jeffrey*, 77 Wn. App. 222, 226, 889 P.2d 956 (1995). To establish the

affirmative defense of necessity, a defendant must prove, by a preponderance of the

evidence, that: (1) he was under unlawful and present threat of death or serious bodily

injury, (2) he did not recklessly place himself in a situation where he would be forced to

engage in unlawful conduct, (3) he had no reasonable alternative, and (4) there was a

4

direct causal relationship between the unlawful action and the avoidance of the threatened harm. *Id.* at 224 (citing *United States v. Lemon*, 824 F.2d 763 (9th Cir. 1987)). In evaluating the sufficiency of this proof, we view the evidence in the light most favorable to the defense. *Fisher*, 185 Wn.2d at 849.

Taken in the light most favorable to Mr. McDermott, the facts easily support elements one, two, and four of the necessity defense. The evidence showed Mr. McDermott, his sister and her young children were subjected to unforeseen threats of death and violence issued by an unknown man in their home. These circumstances satisfy the first two elements. In addition, Mr. McDermott's brief possession of the firearm was related to his effort to scare off the unknown man and avoid a greater perceived harm. This satisfies the fourth element.

The State's arguments focus on element three—the lack of a reasonable alternative. According to the State, insufficient evidence supported Mr. McDermott's belief that the unknown man was armed. Thus, Mr. McDermott need not have armed himself in order to mount an adequate response to the man's threats. The State also claims that even if Mr. McDermott had sufficient reason to believe the man in his house was armed, he had reasonable alternatives such as calling the police or leaving the premises.

5

The State's position is unpersuasive. It is reasonable to infer that an adult subject is armed when he identifies himself as a gang member, issues death threats, lunges at a targeted victim, and makes furtive movements around his waistband. Direct observation of a firearm is unnecessary. *See, e.g.*, *Pennsylvania v. Mimms*, 434 U.S. 106, 111-12, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977); *State v. Lomax*, 24 Wn. App. 541, 544, 603 P.2d 1267 (1979); *United States v. Goddard*, 491 F.3d 457, 462 (D.C. Cir. 2007). In addition, a reasonable juror could find there was no time to wait for police assistance or to evacuate the household. Because Mr. McDermott was faced with a combative man who appeared ready to fire off a gun at any moment, a jury could believe Mr. McDermott's only reasonable option was to arm himself with a gun and attempt to scare off the unknown man through a display of lethal force.

We recognize a jury could have disbelieved the testimony presented by Mr. McDermott and his sister. The jury could have disagreed with the perceived level of threat. Or they could have disbelieved the story about the two unknown men altogether. But those possibilities are not relevant to our analysis. Because the jury could have believed Mr. McDermott and his family were in imminent danger of being shot and that the only reasonable means of protection was for Mr. McDermott to briefly arm himself with a gun, a necessity instruction was warranted.

6

*Sufficiency of the evidence*

Mr. McDermott argues he is entitled to dismissal instead of retrial because the State failed to produce sufficient evidence to convict him of the crime charged. Our standard for reviewing a sufficiency challenge is directly opposite to the one set forth above. Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *Id.* Circumstantial evidence and direct evidence are equally reliable. *Id.* We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Mr. McDermott argues his handling of the shotgun was fleeting and therefore insufficient to constitute possession. We disagree. Even under the facts argued by the defense, Mr. McDermott's contact with the shotgun was more than momentary. He purposefully sought out the shotgun and then used it to scare off the two men in his home. While Mr. McDermott may not have owned the shotgun, his use of it on the day in question was sufficient to constitute possession.

7

Because the State presented sufficient evidence of possession, our reversal of Mr. McDermott's conviction is without prejudice to retrial.

## CONCLUSION

Mr. McDermott's judgment and sentence is reversed. This matter is remanded for further proceedings, consistent with the terms of this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, A.C.J.                              Siddoway, J.

8