# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>GATA LEILUA,<br><br>Appellant. | No.58046-2-II<br><br><br>UNPUBLISHED OPINION |

MAXA, J. – Gata Leilua appeals his second degree assault conviction and his sentence. The conviction is based on a physical altercation between Leilua and Adam Cunningham at the Thurston County jail in which Leilua repeatedly punched Cunningham in the face. Cunningham sustained bruising to his face and head and a cut under his eye that resulted in a scar.

We hold that (1) the evidence was sufficient to support Leilua's second degree assault conviction because Cunningham sustained substantial bodily injury, (2) the trial court did not err in refusing to give a self-defense instruction because the evidence did not support one, and (3) the $500 crime victim penalty assessment (VPA) must be stricken from the judgment and sentence.

Accordingly, we affirm Leilua's conviction, but we remand for the trial court to strike the VPA from the judgment and sentence.

## FACTS

In December 2022, Leilua punched Cunningham several times while both were confined at the Thurston County jail. The State charged Leilua with second degree assault.

Tyler Graham, a sergeant for the Thurston County sheriff's office, testified that he responded to the incident between Leilua and Cunningham. He stated that Cunningham appeared dazed and stunned. Graham testified that Cunningham had blood coming from his nose and mouth, swelling around his eye, and a bleeding cut on his face.

Graham also testified that he reviewed the surveillance video footage to try and determine what happened between Leilua and Cunningham. He looked at the time frame immediately before the incident and he saw Cunningham following Leilua around the dayroom and then standing in the doorway to Leilua's cell. Graham stated that this was odd because inmates were not allowed to go into other inmates' cells.

Graham wanted to determine whether Cunningham was following Leilua around in order to pursue or corner Leilua, so he went further back in the video record. About 10 minutes before the incident, Graham testified that he observed Cunningham sitting on the floor of his cell while Leilua punched him.

On cross-examination, Graham stated that inmates were not allowed to go into each other's cells as a security measure. Defense counsel asked Graham whether it "[w]ould it be considered confrontation to try to enter somebody's cell without their permission." Rep. of Proc. (RP) at 255. Graham responded that it "could be." RP at 255. But on redirect examination, the prosecutor asked Graham, "So just because somebody's standing at another's cell door did not mean to you, based on your experience, that that's a confrontational exchange?" RP at 257. Graham responded, "Not necessarily." RP at 257.

Chase Vandiver, a Thurston County sheriff's deputy, also responded to the incident at the jail. The State offered into evidence pictures that Vandiver took of Cunningham after the incident. Vandiver noted that Cunningham had a black eye, a cut on his face that had to be glued

2

shut, and swelling in his left eye. Cunningham also had marks or bruising behind his ear and on his forehead.

James Brown, a nurse at the Thurston County correctional facility, responded to the incident to provide medical service. Brown testified that he provided medical aid to Cunningham and that Cunningham had the beginning of bruising on his face, abrasions, a few lacerations, and blood in his mouth. A few of the cuts were too deep for Brown to clean up.

Brown suspected that Cunningham may have suffered from a concussion. Upon Brown's recommendation, the jail transferred Cunningham to the hospital. Brown testified that a few days after the incident Cunningham still had some bruises on his face. Photographs showed that the cut under Cunningham's left eye had been closed with Steri-Strips.

Vandiver testified that he met with Cunningham at the jail a few weeks after the incident, and Cunningham had a "scar" under his eye. RP at 268. But he no longer had facial bruising.

Cunningham did not testify at trial, so there was no evidence how the injuries affected him. And the State did not present any medical records at trial, and there was no evidence that Cunningham had been diagnosed with a concussion.

When discussing jury instructions, the trial court asked about jury instructions addressing self-defense and unlawful force. Leilua argued that Cunningham's apparent attempt to enter Leilua's cell was an aggressive act that was some evidence that Leilua was acting in self-defense. The trial court ruled that viewing the evidence in the light most favorable to Leilua, the record did not support giving a self-defense instruction.

The jury found Leilua guilty of second degree assault. The trial court determined that Leilua was indigent. But the court ordered Leilua to pay the $500 VPA.

Leilua appeals his conviction and sentence.

## ANALYSIS

A.    SUFFICIENCY OF EVIDENCE – SUBSTANTIAL BODILY HARM

Leilua argues that the evidence was insufficient to convict him of second degree assault because Cunningham did not suffer substantial bodily harm.  We disagree.

### 1.    Legal Principles

The test for determining the sufficiency of evidence is whether any rational trier of fact could find the elements of the charged crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the State.  *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019).  We resolve all reasonable inferences based on the evidence in favor of the State and interpret inferences most strongly against the defendant.  *Id.*

Under RCW 9A.36.021(1)(a), an individual commits second degree assault by intentionally assaulting another and recklessly inflicts substantial bodily harm under circumstances not amounting to first degree assault.  " 'Substantial bodily harm' means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part."  RCW 9A.04.110(4)(b).  The term "substantial" is not defined by statute.  *State v. McKague*, 172 Wn.2d 802, 805, 262 P.3d 1225 (2011).

In *McKague*, the Supreme Court held that the term substantial "signifies a degree of harm that is considerable and necessarily requires a showing greater than an injury merely having some existence."  *Id.* at 806.  The court approved the dictionary definition of substantial as " 'considerable in amount, value, or worth.' "  *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2280 (2002)).

The defendant in *McKague* was convicted of second degree assault after the defendant punched a storeowner in the head several times and pushed him to the ground, causing the storeowner to strike his head against the pavement. 172 Wn.2d at 804. The storeowner had bruising around his eye, a scalp contusion, and lacerations to his face, head, and arm. *Id.* at 804. The storeowner also was diagnosed with a concussion and a possible fracture of his facial bones. *Id.*

The court held that this evidence was sufficient to support the substantial bodily harm element of the defendant's second degree assault conviction. *Id.* at 807. The court stated, "[The storeowner's] resulting facial bruising and swelling lasting several days, and the lacerations to his face, the back of his head, and his arm were severe enough to allow the jury to find that the injuries constituted substantial but temporary disfigurement." *Id* at 806. The court also stated that the concussion "was sufficient to allow the jury to find that he had suffered a temporary but substantial impairment of a body part or an organ's function." *Id.*

In a pre-*McKague* case, this court held that "serious bruising can rise to the level of 'substantial bodily injury' if the State produces sufficient evidence of temporary but substantial disfigurement." *State v. Hovig*, 149 Wn. App. 1, 13, 202 P.3d 318 (2009). In that case, the court concluded that the State had proved substantial bodily harm when the defendant bit a baby in the cheek, leaving a bright red bruise mark the size of a quarter that lasted between seven and 14 days. *Id.* at 6, 13.

2. Analysis

The issue here is whether Cunningham's facial abrasions, lacerations, and facial bruising constitutes "substantial bodily harm," defined as a "considerable" degree of harm. *McKague*, 172 Wn.2d at 806. The evidence regarding how long the bruising lasted was testimony that the

bruising was still there a few days later, but was gone a few weeks later. So the State proved

only that the bruising lasted a few days. There was no evidence regarding how long most of the

lacerations and abrasions lasted. But the laceration under Cunningham's left eye resulted in a

"scar" that was visible a few weeks later. RP at 268.

Cunningham had less serious injuries than the storeowner in *McKague*. The facial

bruising lasted only three days and there was no concussion diagnosis. And there is some issue

as to whether the bruising was "serious" as noted in *Hovig*. 149 Wn. App. at 13. However,

Cunningham had a scar under his eye. Viewing the evidence in a light most favorable to the

State, a reasonable jury could find that a scar represents a "temporary but substantial

disfigurement." RCW 9A.04.110(4)(b). Therefore, we conclude that the evidence was sufficient

to find that Cunningham suffered substantial bodily harm.

We hold that the evidence was sufficient to support Leilua's second degree assault

conviction.

B.      SELF-DEFENSE JURY INSTRUCTION

Leilua argues that the trial court violated his right to present a defense when it refused to

instruct the jury on self-defense. We disagree.

1.      Legal Principles

A defendant is entitled to an instruction on their theory of the case if evidence supports

that theory. *State v. Moreno*, 14 Wn. App. 2d 143, 161, 470 P.3d 507 (2020). And a defendant

is entitled to a self-defense instruction if there is *some* evidence demonstrating self-defense. *Id.*

at 161-62. "To prove self-defense, there must be evidence that (1) the defendant subjectively

feared that he was in imminent danger of death or great bodily harm, (2) this belief was

objectively reasonable, and (3) the defendant exercised no greater force than reasonably

necessary." *Id.* However, a defendant may not point to the State's absence of evidence in order to satisfy their burden. *State v. Fisher*, 185 Wn.2d 836, 850, 374 P.3d 1185 (2016).

We review de novo whether a defendant was entitled to a self-defense instruction. *Id.* at 849. The defendant is entitled to the benefit of all the evidence and so a self-defense instruction may be based on facts that are inconsistent with the defendant's testimony. *Id.*

2.   Analysis

Leilua points to Graham's testimony that the surveillance video showed Cunningham following Leilua around just before Leilua hit Cunningham and that entering another inmate's cell could be considered confrontational. Based on this evidence, he claims that the jury could have found that Cunningham provoked Leilua and Leilua feared that he was in imminent danger of bodily harm.

But Graham's testimony does not demonstrate that Leilua subjectively feared he was in imminent danger of death or great bodily harm. No witness testified why Cunningham was following Leilua nor that Leilua felt threatened. And Graham merely testified that when he saw Cunningham following Leilua and standing in the doorway of Leilua's cell, it seemed odd because inmates were not supposed to go into other inmate's cells. Although he stated that it could be considered confrontational for an inmate to try and enter another inmate's cell without their permission, he later testified that it was not necessarily a confrontational exchange. But regardless, these statements were in response to hypothetical situations and not directly commenting on the situation between Leilua and Cunningham.

Leilua relies on *State v. Werner*, 170 Wn.2d 333, 241 P.3d 410 (2010). In *Werner*, the Supreme Court held that the defendant was entitled to a self-defense jury instruction after his gun accidentally went off while seven dogs were circling him. 170 Wn.2d at 336, 338. The

defendant had stated that he was afraid and the court held that his fear was reasonable, given he was being surrounded by seven snarling dogs. *Id.* at 337-38.

Here, there is no evidence that Cunningham was threatening Leilua. Following a person around is hardly similar to being surrounded by seven snarling dogs. And no witness testified that Leilua was afraid of Cunningham.

Leilua also points out that no witness saw or testified to what happened immediately before the incident. But a defendant may not point to the absence of evidence in order to satisfy their burden. *Fisher*, 185 Wn.2d at 850.

Therefore, we hold that the trial court did not err in refusing to give a self-defense instruction because the evidence did not support one.

C.      CRIME VICTIM PENALTY ASSESSMENT

Leilua argues, and the State concedes, that the $500 VPA should be stricken from his judgment and sentence. We agree.

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). For purposes of RCW 10.01.160(3), a defendant is indigent if they meet the criteria in RCW 10.101.010(3). Although this amendment took effect after Leilua's sentencing, it applies to cases pending on appeal. *Ellis*, 27 Wn. App. 2d at 16.

The trial court determined that Leilua was indigent. Therefore, on remand the $500 VPA must be stricken from the judgment and sentence.

CONCLUSION

We affirm Leilua's conviction, but we remand for the trial court to strike the VPA from the judgment and sentence.

No.58046-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

CHE, J.

9