**FILED**
**JUNE 13, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36004-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JULIAN CAMERON LESTER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Julian Lester appeals from a conviction for felony physical control of a motor vehicle, arguing that his trial counsel rendered ineffective assistance, his statements to police were given in violation of his right to an attorney, and his offender score was miscalculated. We affirm the conviction and remand for resentencing.

FACTS

Deputy Sheriffs came upon two vehicles parked along the shoulder of a road in Whitman County. The vehicles were facing each other, about a foot from the fog line. Mr. Lester was sitting in the driver's seat of a van with its engine idling. Ryan Benson was with him.

As the sheriffs pulled over, Mr. Lester got out of his car and approached them. He swayed as he walked and the deputies observed that he was significantly impaired—

bloodshot and watery eyes, very slurred speech, and an odor of intoxicants about him. In response to a question, he told the deputies that he had consumed four 40-ounce beers. The deputies attempted to administer field sobriety tests, but Mr. Lester told them it was "kind of ridiculous and a waste of time." He reiterated that he had "four 40s" and was "drinking like a champ." The encounter was recorded by the deputies' video camera.

Lester explained that he had been working on his van and had just returned with a new battery that allowed him to start the van. Benson told the deputies that he had picked up Lester, driven him to the automotive store to purchase the battery, and then drove him to the van. Mr. Lester denied driving the van to the scene and told the deputies that he intended to get it started so that a friend from town could drive it. After turning the engine off, a deputy was unable to re-start the van.

The deputies arrested Mr. Lester for physical control and took him to the jail. There he was advised of his constitutional rights. Approximately six minutes later he asked to speak to an attorney before taking the breath alcohol test. He was put in touch with counsel and spoke to her for about eight minutes. He was then again advised of his constitutional rights and submitted to a breath alcohol test. The test results showed breath alcohol levels of .134 and .133. In the course of the interview he again advised officers that he had been drinking "Steel Reserve" and that his ability to drive "would have been" affected. Clerk's Papers (CP) at 26.

2

Based on his prior drinking offenses, the prosecutor filed a felony physical control charge. The matter proceeded to jury trial. The defense did not present evidence and argued the case to the jury on a theory that the vehicle was not operable, so Mr. Lester was not in physical control of the van because he could not drive it away.

The jury returned a guilty verdict, and then subsequently found the existence of three prior impaired driving offenses. At sentencing, the court included a prior deferred prosecution in the defendant's offender score. He was sentenced, with an offender score of 8, to a sentence of 60 months in prison.

Mr. Lester timely appealed to this court. A panel considered his appeal without hearing argument.

ANALYSIS

This appeal presents claims of ineffective assistance of counsel, error in the admission of statements made after he consulted with counsel, and error involving the offender score calculation. We take the three issues in the order listed.

*Ineffective Assistance*

Mr. Lester contends that his counsel provided defective representation by failing to seek an instruction on the statutory defense to physical control and by not seeking a limiting instruction. He fails to satisfy the heavy burden of establishing that his counsel was ineffective.

The standards governing review of this argument are long settled. The Sixth Amendment guarantee of counsel requires defense counsel to perform to the standards of the profession. Failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-335, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on a claim of ineffective assistance, the defendant must show both that his counsel erred and that the error was so significant, in light of the entire trial record, that it deprived him of a fair trial. *Id.* at 690-692.

RCW 46.61.504(2) provides that it is an affirmative defense to the charge of physical control that "prior to being pursued by a law enforcement officer, the person has moved the vehicle safely off the roadway." The defense can be invoked by a defendant who has someone else move the car off the roadway. *State v. Votava*, 149 Wn.2d 178, 181, 66 P.3d 1050 (2003). One of the purposes of the defense is to prevent an intoxicated person from entering a vehicle except as a passenger. *Id*. at 184 (citing *State v. Smelter*, 36 Wn. App. 439, 444, 674 P.2d 690 (1984)). A defendant is entitled to an instruction on an affirmative defense if, inter alia, there is sufficient evidence in the record to support the instruction. *State v. Fisher*, 185 Wn.2d 836, 848-849, 374 P.3d 1185 (2016). The

failure to request an instruction constitutes a waiver of the issue. *State v. Scott*, 110 Wn.2d 682, 685-686, 757 P.2d 492 (1988).

Mr. Lester faults his counsel for not seeking this instruction. However, there is insufficient evidence in the record to support the defense. Lester denied driving the vehicle and there is no evidence that he caused it to be placed where it was located. Whether that location was "safely" off the roadway also is an open question because no one raised the issue at trial or testified concerning the parking location. The van was parked one foot from the fog line. While that evidence establishes that it was "off the roadway," it does not necessarily establish that it was "safely" so located.

In addition to these problems, it also would have been problematic to argue this defense in light of the defendant's statement that he did not drive the vehicle. Counsel would be making his client out to be a liar in front of the jury by claiming that he moved the van safely off the roadway after he denied driving. Finally, even if the record otherwise supported giving the instruction, it is doubtful that it would aid Mr. Lester here. As noted in *Votava* and *Smelter*, the defense is not available to an intoxicated person who enters a parked vehicle and then takes control of it by moving into the driver's seat.

In light of these difficulties, trial counsel understandably pursued the defense supported by the evidence—whether the vehicle was capable of being operated. There was evidence that a new battery had been installed, but the car still did not start for law enforcement. The defense also cross-examined the State's final witness, Mr. Heinrich, to

establish that the van had a problem with the starter, not the battery. Accordingly, the entire defense argument to the jury consisted of contesting the operability of the vehicle. Mr. Lester could not be in physical control of a motor vehicle if neither he nor anyone else could operate it at the time. *Smelter*, 36 Wn. App. at 442-446. This easily was the strongest defense and counsel did not err in pursuing it.

Mr. Lester also now argues that his counsel should have sought an instruction in limine when the State cross-examined Mr. Benson about statements he made at the scene that were inconsistent with his trial testimony. In particular, Mr. Benson testified that he and Mr. Lester did not have a plan for driving the van back to town since they did not know if it would start. That evidence was at odds with his statement to the deputies at the scene that he intended to follow Lester back to town.

There is a strong presumption of effectiveness. *McFarland*, 127 Wn.2d at 336. Many counsel eschew limiting instructions because they simply reinforce to the jury evidence that counsel would just as soon ignore, thus making the decision to forego the instruction a tactical choice. *State v. Humphries*, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014). In addition, the evidence from Benson was not relied on by either party in closing argument. Defense counsel and the prosecutor both told jurors that no intent to drive needed to be established, and the prosecutor referenced the testimony of Mr. Heinrich, not Mr. Benson, when addressing the drivability issue. Report of Proceedings at 161, 165-166. Benson's testimony was not an issue in the trial.

6

On this record, Mr. Lester cannot show either that his counsel erred by failing to seek an instruction in limine or that his case was prejudiced by counsel's failure. He needed to do both.

Mr. Lester has not demonstrated that his trial counsel performed ineffectively.

*Statements Made After Consultation with Counsel*

Mr. Lester next argues that the statements made in the alcohol interview at the jail should have been suppressed because they were obtained after he exercised his right to talk to an attorney. The State attempts to concede error and argues that any error was harmless. Because we agree that any error was harmless, we do not address the attempted concession.

Because this issue was not raised in the CrR 3.5 hearing, the record of this case does not truly support the appellant's argument that any statements were provided *after* the assertion of the right to counsel. The decision to take or refuse the breath test is made after the interview form is completed. We simply do not know where in the process Mr. Lester stopped answering questions and requested counsel.[1]

Nonetheless, even if all of the statements were made after asserting the right to counsel, the evidence was clearly harmless beyond a reasonable doubt. Our record

---

[1] We also do not know what advice counsel gave to her client, and what directives, if any, counsel communicated to the deputy. For all this record indicates, counsel may have urged her client to answer the questionnaire and take the breath test.

reveals only three statements from the interview were used at trial, and all of those

repeated statements made at the scene and captured by the video recording. Those

statements were: (1) Lester consumed four 40s; (2) he drank "Steel Reserve," and (3) he

would have been affected by the alcohol. CP at 26; RP at 81-83.

All of this evidence went to the uncontested fact that Mr. Lester was intoxicated

when contacted by the police. All of this evidence was duplicative of evidence already in

the record for the jury. None of it affected the verdict.

Any error here was harmless beyond a reasonable doubt.

*Sentencing*

Mr. Lester makes multiple arguments concerning his sentencing. Because one of

those arguments merits a new sentencing proceeding, we need only address two of his

claims. His arguments concerning the filing fee and DNA collection assessment can be

addressed at resentencing in light of *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714

(2018).

Mr. Lester correctly notes that a prior successful deferred prosecution erroneously

was included in the offender score. A successful deferred prosecution results in a

dismissal of charges. RCW 10.05.120(1). A prior deferred prosecution can be used to

elevate a current offense to a felony. RCW 46.61.5055(4); *City of Kent v. Jenkins*, 99

Wn. App. 287, 290-291, 992 P.2d 1045 (2000). That was not done in this case, however;

the jury found the existence of three prior convictions without considering the deferred prosecution.

Although a successful deferred prosecution may elevate an offense, it does not fall within the definition of a "serious traffic offense." RCW 9.94A.030(45). Serious traffic offenses are counted when calculating the offender score for a felony physical control conviction. RCW 9.94A.525(11). Since the deferred prosecution was not a serious traffic offense, it was error to include it when calculating Mr. Lester's offender score. Resentencing is required.

Mr. Lester also argues that the trial court erred by including a juvenile conviction for first degree theft. He contested the use of this conviction at sentencing by providing plea paperwork that suggested he was advised about the elements of first degree possession of stolen property rather than the elements of first degree theft. Although this is suggestive of legal error, it does not meet Mr. Lester's burden.

The State had no affirmative burden of proving that prior convictions were constitutionally valid. *State v. Ammons*, 105 Wn.2d 175, 187, 713 P.2d 719, 718 P.2d 796 (1986). "However, a prior conviction which has been previously determined to have been unconstitutionally obtained or which is constitutionally invalid on its face may not be considered." *Id*. at 187-188. The court then elaborated on the meaning of "invalid on its face" by addressing challenges presented by the defendants. One defendant challenged a prior guilty plea by arguing that the plea statement form suffered from

various deficiencies, including a failure to state the elements of the crime. The court determined that the validity of the issues could not be made from the face of the guilty plea form. *Id.* at 189. Instead, the defendant needed to "pursue the usual channels for relief." *Id.*

*Ammons* is dispositive of Mr. Lester's argument. He alleges one of the same deficiencies in his earlier plea form that was at issue in *Ammons.* As there, the answer is the same. The noted defect does not establish invalidity on its face. The trial court, thus, did not err by including the juvenile first degree theft conviction.

The conviction is affirmed. The sentence is reversed and the case is remanded for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Pennell, A.C.J.

_____
Siddoway, J.

10